IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EPOS TECHNOLOGIES LTD., <br> 4 Haharash St., Hod Hasharon 45240, Israel, <br><br> Plaintiff, <br> v. <br><br> PEGASUS TECHNOLOGIES LTD., <br> 27 Hametzuda St., Azur 58001, Israel, <br><br> Defendant | Case No. 1:07cv0416 (RWR) <br><br> Hon. Richard W. Roberts |

**MEMORANDUM IN SUPPORT OF DEFENDANT
PEGASUS TECHNOLOGIES LTD.'S MOTION TO DISMISS
OR, IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT**

This Court lacks subject matter jurisdiction as there is presently no actual case or controversy between the parties sufficient to give rise to jurisdiction. Instead, the Complaint for declaratory judgment filed by Plaintiff EPOS TECHNOLOGIES LTD. ("EPOS") seeks an advisory opinion. Accordingly, the Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. Alternatively, Plaintiff EPOS should be required to provide a more definite statement pursuant to Fed. R. Civ. P. 12(e) identifying with specificity the allegedly infringing subject matter and the alleged acts which constitute infringement.

**FACTS**

Defendant Pegasus Technologies Ltd. ("Pegasus") is a corporation organized and existing under the laws of Israel, with its principal business address in Israel. (Compl. ¶ 6). Plaintiff EPOS is also located in Israel. (Compl. ¶ 5). The Complaint does not allege that EPOS has an

office or subsidiary located anywhere within the United States, and there are no allegations that EPOS has any contacts within this jurisdiction.

Pegasus is the owner of U.S. Patent Nos. 6,392,330 ("the '330 patent"); 6,724,371 ("the '371 patent"); 6,841,742 ("the '742 patent"); and 6,326,565 ("the '565 patent") (collectively the "patents-in-suit").

The Complaint merely alleges that Plaintiff *intends* to sell products which defendant allegedly asserted infringe the patents-in-suit. (Compl. ¶ 3)(emphasis added). There is no allegation in the Complaint that EPOS has actually made, used, sold and/or offered to sell, in the United States, and/or imported into the United States, any allegedly infringing device. Nor is there any allegation of *when* Plaintiff intends to sell its products, or that the alleged infringing acts would be imminent. Additionally, the Complaint does not identify the specific devices which Plaintiff asserts do not infringe the patents-in-suit. Based upon intended sales of unidentified infringing devices commencing at some unknown time, EPOS seeks a declaratory judgment that Pegasus' patents-in-suit will not be infringed and are invalid.

In its attempt to conjure an actual justiciable controversy between EPOS and Pegasus, EPOS alleges that it has investors (Compl. ¶ 12), that Pegasus has investors (Compl. ¶ 13), and that when the investors met,[1] they talked about EPOS and Pegasus. (Compl. ¶ 14). There is no allegation that any of the investors are U.S. entities. Upon information and belief, the identified investors are located in Israel. The Complaint also alleges that another conversation relating to EPOS and Pegasus took place between different investors, although there is no allegation where

---

[1] The alleged meeting presumably would have taken place in Israel. There is no allegation as to the purpose of the alleged meeting and whether the alleged meeting had anything to do with EPOS and/or Pegasus. It appears that the alleged statement was nothing more than simply an informal conversation about their respective investments.

either investor is located. (Compl. ¶ 15). Again, upon information and belief, these investors too are located in Israel.

Paragraphs 16 and 17 of the Complaint relate to Dane-Elec, a company traded on the Paris Stock Exchange. Again, there is no nexus between the allegations set forth in these paragraphs and this jurisdiction or the United States.

Paragraphs 18-21 of the Complaint reference a December 31, 2006 letter from Pegasus' patent attorney in *Israel* to EPOS in *Israel*. The letter references what Pegasus believed EPOS was "about" to do, and based upon the allegations in the Complaint, filed March 1, 2007, has still not occurred.

## ARGUMENT

I. **LEGAL STANDARDS**

   A. **Federal Rule Civil Procedure 12(b)(1)**

"On a motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing that the court has subject-matter jurisdiction." *Mutual Pharmaceutical Co., Inc. v. Pfizer Inc.*, 307 F.Supp.2d 88, 91-92 (D.D.C. 2004)(*citing Rasul v. Bush*, 215 F.Supp.2d 55, 61 (D.D.C. 2002)). "Jurisdiction depends upon the facts as they existed when the complaint was brought." *Sallen v. Corinthians Licenciamentos LTDA*, 273 F.3d 14, 23 (1st Cir. 2001); *see also Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997). Title 28 U.S.C. § 1653 provides that "[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts," but the statute only allows remedy of "inadequate jurisdictional allegations . . . not defective jurisdictional facts." *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830-31 (1989); *see also Commercial Union Ins. Co. v. U.S.*, 999 F.2d 581, 585 (C.A.D.C. 1993).

"[T]he Court must accept the complaint's well-pled factual allegations as true and draw all reasonable inferences in the plaintiff's favor, [but] where the motion to dismiss concerns a dispute over the facts alleged to establish subject matter jurisdiction, the Court may not deny the motion to dismiss merely by assuming the truth of the facts alleged by the plaintiff and disputed by the defendant. Instead, the Court must go beyond the pleadings and resolve any disputed issues of fact the resolution of which is necessary to a ruling upon the motion to dismiss." *Citizen Electronics Co., Ltd. v. Osram GmbH*, 377 F.Supp.2d 149, 152 (D.D.C. 2005)(*quoting Phoenix Consulting Inc. v. Republic of Angola*, 216 F.3d 36, 40 (C.A.D.C. 2000))(internal citations and quotation marks omitted).

### B.     Federal Rule Civil Procedure 12(b)(6)

"A motion to dismiss pursuant to Rule 12(b)(6) does not test whether the plaintiff will prevail on the merits but instead whether the claimant has properly stated a claim." *See Pitney Bowes, Inc. v. U.S. Postal Service*, 27 F.Supp.2d 15, 19 (D.D.C. 1998)(*citing Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). "The court may dismiss a complaint for failure to state a claim only if 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Pitney Bowes*, 27 F.Supp.2d at 19 (*quoting Hishon v. King & Spalding*, 467 U.S. 69 (1984)). As with a motion to dismiss pursuant to Rule 12(b)(1), "the court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff." *Pitney Bowes*, 27 F.Supp.2d at 19 (*quoting Antonelli v. Sheahan*, 81 F.3d 1422, 1427 (7th Cir. 1996)).

C.    **The Declaratory Judgment Act**

1.    **Actual Case or Controversy**

In evaluating a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), the declaratory judgment plaintiff bears the burden of persuasion to establish subject matter jurisdiction by a preponderance of the evidence. *See Citizen Electronics*, 377 F.Supp.2d at 152 (*citing Thompson v. Capitol Police Bd.*, 120 F.Supp.2d 78, 81 (D.D.C. 2000)); *see also Indium Corp. of Am. v. Semi-Alloys, Inc.*, 781 F.2d 879, 883 (Fed. Cir. 1985) ("The declaratory judgment plaintiff carries the burden of proving 'the existence of facts underlying' his allegations of the existence of an actual controversy.")(affirming dismissal for lack of jurisdiction). "The plaintiff has the burden of supporting the jurisdictional allegations of the complaint by competent proof." *International Harvester Co. v. Deere & Co.*, 623 F.2d 1207, 1210 (7th Cir. 1980). "In deciding whether the plaintiff has carried this burden, the court must look to the state of affairs as of the filing of the complaint; a justiciable controversy must have existed at that time." *Id.* The declaratory judgment plaintiff's allegations should be closely scrutinized. *See Mutual Pharmaceutical*, 307 F.Supp.2d at 92 ("Because subject-matter jurisdiction focuses on the court's power to hear the claim, . . . the court must give the plaintiff's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule l2(b)(6) motion for failure to state a claim."). In deciding a Rule 12(b)(1) motion a court may consider materials outside the pleadings to assess whether the declaratory judgment plaintiff has met its burden. *See Indium,* 781 F.2d at 884; *Mutual Pharmaceutical*, 307 F.Supp.2d at 92.

Previously, the Federal Circuit used a two-part test to determine whether there was a case or controversy in patent suits. *See Teva Pharmaceuticals USA, Inc. v. Pfizer, Inc.*, 395 F.3d

1324, 1330 (Fed. Cir. 2005). That test required (1) "a reasonable apprehension on the part of the declaratory judgment plaintiff that it will face an infringement suit, and (2) present activity by the declaratory judgment plaintiff which could constitute infringement, or concrete steps taken by the declaratory judgment plaintiff with the intent to conduct such activity." *Id.* The Supreme Court overruled the reasonable apprehension test in *MedImmune, Inc. v. Genentech, Inc.*, 127 S.Ct. 764, 774 (2007) (holding that licensee's failure to cease its payment of royalties, which removed any reasonable apprehension of suit, did not render nonjusticiable a dispute over the validity of the patent).

   Notably, the Supreme Court did not overrule the second part of the Federal Circuit's test, requiring present activity by the declaratory judgment plaintiff which could constitute infringement, or concrete steps taken to conduct such activity. Instead, the Supreme Court reaffirmed the rule that a dispute must be "definite and concrete, touching the legal relations of parties having adverse legal interests; and that it be real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id.* at 771 (internal quotations omitted).

   The fact that the Supreme Court did not overrule the second part of the Federal Circuit's test is born out by subsequent cases, none of which found proper jurisdiction where no act or imminent act of possible infringement existed. *See, e.g.*, *Teva Pharmaceuticals USA, Inc. v. Novartis Pharmaceuticals Corp.*, 482 F.3d 1330 (Fed. Cir. 2007) (addressing a case where the declaratory judgment plaintiff filed an ANDA, which constitutes a statutory act of infringement); *Sandisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372 (Fed. Cir. 2007) (deciding a case between two parties, each with products that infringe the other's patents); *Rite-Hite Corp. v.*

*Delta T Corp.*, 2007 WL725327 (E.D. Wis. 2007) (noting that neither party disputed actual or imminent infringement action).

## 2. Discretionary Exercise of Declaratory Judgment Jurisdiction

Even if a declaratory judgment plaintiff proves an actual controversy, courts have unique and substantial discretion to decline to exercise jurisdiction. *See MedImmune*, 127 S.Ct. at 776 (*citing Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995)). The declaratory judgment act merely states that a court "may" offer declaratory relief if there is an actual controversy. 28 U.S.C. § 2201. Furthermore, the Supreme Court specifically vested district courts with discretion in the first instance "because facts bearing on the usefulness of the declaratory judgment remedy, and the fitness of the case for resolution, are peculiarly within their grasp." *MedImmune*, 127 S.Ct. at 776 (*quoting Wilton*, 515 U.S. at 289)(internal quotations omitted). As such, district courts have a unique breadth of discretion - not found in other areas of law - to decline to exercise jurisdiction:

> Simply because there is an actual controversy between the parties does not mean that the district court is required to exercise that jurisdiction. . . . The Supreme Court recently reaffirmed that the Declaratory Judgment Act thereby accords district courts a "unique breadth of . . . discretion to decline to enter a declaratory judgment." The Court noted that the Declaratory Judgment Act is "an enabling Act" that confers on district courts "unique and substantial discretion in deciding whether to declare the rights of litigants." . . . In expounding on the "unique breadth" of the district court's discretion, the Court explained that "[t]he statute's textual commitment to discretion, and the breadth of leeway we have always understood it to suggest, distinguish the declaratory judgment context from other areas of the law in which concepts of discretion surface."

*EMC Corp. v. Norand Corp.*, 89 F.3d 807, 813 (Fed. Cir. 1996)(*quoting Wilton*, 515 U.S. at 286-87)(affirming district court's decision not to exercise jurisdiction). Thus, even if jurisdiction could be found in a declaratory judgment suit, a district court has very wide latitude in deciding whether to decline to exercise jurisdiction.

    **D.**    **Federal Rule of Civil Procedure 12(e)**

As a general rule, a complaint must contain a short and plain statement of jurisdiction, claims and requested relief. Fed. R. Civ. P. 8(a). Both Rule 8 and the case law decided thereunder make clear that the function of pleadings under the Federal Rules of Civil Procedure is to give an adverse party fair notice of claims asserted in such a way that enables that party to prepare an answer, assert available defenses and prepare for trial. *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988).

**II.**    **THIS COURT LACKS SUBJECT MATTER JURISDICTION AS THERE IS NO ACTUAL CASE OR CONTROVERSY**

Declaratory judgment jurisdiction exists when there is an "actual controversy" between adverse parties, appropriate to immediate and definitive determination of their legal rights. *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239-41 (1937). An actual controversy, which supports declaratory judgment jurisdiction, is "distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id.* at 240-41. Because the difference between an abstract question and an actual controversy "is necessarily one of degree," the questions are to be answered by considering the totality of the circumstances. *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941); *Arrowhead Industrial Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 736 (Fed. Cir. 1988). The sole requirement for jurisdiction under the Declaratory Judgment Act is that there be a true, "actual controversy." *Arrowhead*, 846 F.2d at 735.

In the present case, there is no actual controversy because the allegedly non-infringing products have not been specifically identified, and there is no allegation that the design of the allegedly non-infringing products has been finalized, or that they are being manufactured in or being exported to the United States.

Additionally, there has been no allegation of any activity which could be considered infringement in the United States under 35 U.S.C. § 271. EPOS merely asserts that it *intends* to sell products which defendant believe *will* infringe the patents-in-suit if shipped to the United States. Again, without knowing the stage of design, development, or manufacturing of EPOS' allegedly non-infringing products, any infringement analysis by this Court would be speculative. EPOS is seeking an advisory opinion which it can then use to determine whether it needs to change its design, and/or whether it is prudent to enter the U.S. market. In this case the dispute is not "definite and concrete," but rather EPOS seeks "an opinion advising what the law would be upon a hypothetical state of facts." *See MedImmune*, 127 S.Ct. at 771. EPOS' Complaint should, thus, be dismissed for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1).

The Complaint should, likewise, be dismissed because EPOS has failed to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). EPOS has failed to allege any infringing activity, and has failed to allege any imminent infringing activity in the United States. In fact, EPOS does not allege any time frame in which it intends to commence any infringing activity. It necessarily follows that, without identifying a single alleged infringing act or device, EPOS has failed to state a claim. EPOS is, thus, left in the untenable position of seeking impermissible relief. That is, it appears that EPOS hopes to persuade the Court to grant an advisory opinion, so that EPOS may delay entry into the U.S. market pending a finding by the Court of no infringement or invalidity.

The absence of an actual justiciable controversy is vivid when viewed from the patent owner's perspective. For Pegasus to even contemplate bringing an infringement action, Pegasus must have a good faith belief that EPOS has either made, used, offered to sell, or sold the allegedly infringing product within the United States, or import it into the United States. 35

U.S.C. § 271(a). Otherwise, there would be no claim (infringing acts in violation of 35 U.S.C. § 271) upon which cognizable relief (in the form of an injunction against infringing sales or money damages) could be granted. Yet, EPOS, by contrast, seeks to circumvent the statutory framework by maintaining this action based upon a Complaint evidencing a complete absence of any facts that would support an infringement action by Pegasus. EPOS seeks the best of both worlds, *i.e.*, EPOS wants an advisory opinion without potential liability for infringement.

As such, EPOS' failure to allege any potentially infringing activity in the United States fails to state a claim upon which relief could be granted, and as such, the Court does not have subject matter jurisdiction over this case.

### III. EVEN IF THERE WERE AN ACTUAL CASE OR CONTROVERSY, THE COURT SHOULD DECLINE TO EXERCISE DECLARATORY JUDGMENT JURISDICTION

Even when there is declaratory judgment jurisdiction, a district court's decision on whether to exercise that jurisdiction is discretionary. *Arrowhead*, 846 F.2d at 735 n.6. However, the district court does not have unfettered discretion. *EMC*, 89 F.3d at 813. Two criteria are generally used in determining whether a court should exercise its discretion to issue a declaratory judgment: (1) whether the judgment will serve a useful purpose in clarifying and settling the legal relations at issue; and (2) whether the judgment will terminate and afford relief from uncertainty, insecurity, and controversy giving rise to the proceeding. *Erbamont, Inc. v. Cetus Corp.*, 720 F.Supp. 387, 392 (D. Del. 1989).

In the present case, the allegedly non-infringing products have not been specifically identified, and there has been no allegation of any activity which could be considered infringement under 35 U.S.C. § 271. EPOS merely asserts that it *intends* to sell products which defendant have accused *will* infringe the patents-in-suit. EPOS does not allege *when* it intends to

10

commence any alleged infringing activity, or that the alleged infringing activity is imminent. As such, the Court will not be able to clarify and settle the legal relations at issue; and until the precise alleged activity is known and has commenced, the Court will not be able to afford relief from any alleged uncertainty, insecurity, and controversy.

The parties are both Israeli companies. Upon information and belief, all of the alleged threatening activity occurred in Israel, and the devices at issue are likely being designed, developed and manufactured abroad. Although the basis of the action relates to possible infringement of U.S. patents, on the condition that the products are eventually shipped to the United States, the simple fact of the matter is that the Complaint does not allege any activity has occurred which could constitute infringement.

The Federal Circuit explained that "as long as [a] district court acts in accordance with the purposes of the Declaratory Judgment Act and the principles of sound judicial administration, the court has broad discretion to refuse to entertain a declaratory judgment." *EMC*, 89 F.3d at 813-14. Declining to exercise jurisdiction here will further the purposes of the Declaratory Judgment Act and principles of sound judicial administration.

The central objective of the Declaratory Judgment Act is to allow truly threatened parties to adjudicate their dispute. *See EMC,* 89 F.3d at 814-15. In *EMC*, the Federal Circuit affirmed the district court's decision declining to exercise jurisdiction because, in the district court's view, exercising jurisdiction would create "an incentive structure that is inconsistent with the public interest in preserving declaratory proceedings for cases closer to the central objectives of declaratory proceedings." *Id.* at 810. The EMC district court was concerned that accepting jurisdiction would allow other parties in the declaratory judgment plaintiffs position to "abuse the declaratory judgment device." *Id.* at 814.

These same concerns apply here. If this Court were to accept jurisdiction, it would encourage other potential infringers to file declaratory judgment actions against patentees, even when they have no legitimate basis for jurisdiction, in hope of provoking responses that they could use to support jurisdiction.

Furthermore, declining jurisdiction here would further "principles of sound judicial administration." *EMC*, 89 F.3d at 813-14. If baseless declaratory judgment suits can be used to provoke jurisdiction, the courts will undoubtedly see many more baseless declaratory judgment suits. This undermines "sound judicial administration." *Id.* It will also encourage more U.S. patent litigation because patentees will feel that they must respond to baseless declaratory judgment suits with infringement claims in the United States because any other reaction (*e.g.*, responding only abroad) might lead to jurisdiction in the declaratory judgment plaintiff's chosen forum. Thus, patentees who did not want to litigate their patents would be reluctantly drawn into unnecessary litigation. Encouraging unnecessary litigation does not comport with "principles of sound judicial administration," *id.*, and is not a worthwhile "investment of time and resources," *Serco Services Co., L.P. v. Kelley Co., Inc.*, 51 F.3d 1037, 1039 (Fed. Cir. 1995).

As such, the Court should decline exercising jurisdiction over this case.

## IV. ALTERNATIVELY, EPOS SHOULD BE REQUIRED TO MAKE A MORE DEFINITE STATEMENT PURSUANT TO FED. R. CIV. P. 12(e)

If the Court determines that dismissal is not warranted, EPOS should be required to provide a more definite statement. The Complaint fails to identify the allegedly infringing subject matter and the alleged acts which constitute infringement. To prepare a proper response to the Complaint, Pegasus must know with specificity the devices which would allegedly have been shipped or sold in the United States which give EPOS concern that they will be liable for infringement in the United States, and any acts which EPOS alleges could give rise to an

allegation of infringement under 35 U.S.C. § 271(a), (b) and/or (c), *e.g.*, whether EPOS, without authority, makes, uses, offers to sell, or sells any patented invention, within the United States, or imports into the United States any patented invention during the term of the patent therefore, or committed any acts which would constitute contributory infringement or would actively induce an infringement.

Accordingly, if the Court determines that dismissal is not warranted, EPOS should be required to make a more definite statement.

## **CONCLUSION**

For the forgoing reasons, all counts of the Complaint should be dismissed. In the event that the Court determines that dismissal is not warranted, Plaintiff EPOS should be directed to make a more definite statement identifying with specificity the allegedly infringing subject matter and the alleged acts which constitute infringement.

Date: June 28, 2007                                  Respectfully submitted,

/s/ Michael J. Fink
Michael J. Fink
P. Branko Pejic
Greenblum & Bernstein, P.L.C.
1950 Roland Clarke Place
Reston, VA 20191
Phone/Fax: (703) 716-1191/716-1180