**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

———————————————————————  )
                                                                          )
EPOS TECHNOLOGIES LTD.,                             )
4 Haharash St., Hod Hasharon 45240, Israel,     )
                                                                          )
                        Plaintiff,                               )          Case No. 1:07cv0416 (RWR)
            v.                                                    )
                                                                          )          Hon. Richard W. Roberts
PEGASUS TECHNOLOGIES LTD.,                     )
27 Hametzuda St., Azur 58001, Israel,               )
                                                                          )
                        Defendant.                             )
———————————————————————  )

**DEFENDANT PEGASUS TECHNOLOGIES LTD.'S**
**REPLY TO EPOS TECHNOLOGIES LTD.'S OPPOSITION**
**TO PEGASUS TECHNOLOGIES LTD.'S MOTION TO DISMISS**
**OR, IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT**

        EPOS' complaint ("Complaint") should be dismissed because EPOS' alleged "intention" to enter the U.S. market with an unspecified "EPOS pen" is insufficient to make its asserted dispute with Pegasus ripe for declaratory relief.  EPOS' own opposition to Pegasus' Motion to Dismiss ("Opposition") further demonstrates that this litigation is fatally premature.  Having been provided by Pegasus' Motion to Dismiss with the opportunity to clarify its alleged plans to enter the U.S. market with a definite product that would or would not constitute an infringement of Pegasus' patents, EPOS fails to identify a specific product and fails to specify a definite time for market entry.  The very documents EPOS submits to demonstrate the existence of a product-at-issue proclaim that the EPOS products are works-in-progress subject to change in both form and function.

        Thus, EPOS fails to satisfy the jurisdictional requirement that declaratory relief be reserved for disputes that are both <u>imminent and real</u>.  Because any basis for the omitted

allegations would be readily known to EPOS, their omission strongly suggests that EPOS'

alleged plans are neither imminent nor real.  Instead, EPOS invites this Court to render an

impermissible ***advisory opinion*** that if EPOS <u>were at some time in the indefinite future</u> to enter

the U.S. market with an <u>indefinite product</u> it would not infringe Pegasus' patents apparently to

placate investors.  EPOS' own admission that it has already delayed its "intended" entry into the

United States market demonstrates that that EPOS' alleged plans are far from certain.  Finally,

because EPOS' own admissions render doubtful the ripeness of its alleged dispute with Pegasus,

EPOS' Complaint falls squarely within the class of declaratory actions properly subject to

discretionary dismissal.

Even if the supplemental assertions in EPOS' Opposition are deemed to clarify somewhat

EPOS' alleged dispute with Pegasus, the allegations in EPOS' <u>Complaint</u> remain fatally deficient

for failure to identify a specific product and failure to identify acts within the United States

sufficient to demonstrate a justiciable case or controversy.  Accordingly, EPOS' Complaint

should be dismissed.[1]

## I.    EPOS' COMPLAINT SHOULD BE DISMISSED BECAUSE EPOS HAS FAILED TO ALLEGE A DEFINITE DISPUTE THAT IS RIPE FOR DECLARATORY RELIEF

As explained in Pegasus' opening brief ("Motion"), EPOS' Complaint should be

dismissed because the dispute as alleged fails to satisfy the jurisdictional requirement that it be

real and imminent.  Because EPOS fails to identify a specific product and fails to demonstrate an

imminent entry of that product into the United States, the dispute as alleged cannot satisfy either

jurisdictional requirement of standing or ripeness.  *See Benitec Australia, Ltd v. Nucleonics, Inc.*,

---

[1]  Although Pegasus disputes many of the assertions made in EPOS' affidavits, in the interest of focusing the issues relating to this motion for the Court, Pegasus will not submit evidence to challenge those affidavits at this time, but reserves the right to contest these allegations in the future.

___ F.3d ___, 2007 WL 2069646 at *6-7 (Fed. Cir. July 20, 2007) ("desire" to enter market and discussions with unnamed potential customer do not "meet immediacy and reality requirement"); *Teva Pharms. USA, Inc. v. Novartis Pharms. Corp.*, 482 F.3d 1330, 1337-38 (Fed. Cir. 2007) (declaratory plaintiff must demonstrate standing, including a definite and concrete injury-in-fact, and that the issue for which declaratory relief is sought must be ripe for judicial determination). Although EPOS seeks a declaratory judgment that "EPOS does not infringe … [Pegasus' patents]," (Complaint, Prayer for Relief), EPOS' Complaint fails to identify a specific product and fails to specify the potentially infringing acts to which that declaration would apply. EPOS' Opposition fails to correct this deficiency. To avoid dismissal for want of subject matter jurisdiction EPOS has the burden of both demonstrating the existence of a <u>definite</u> product and that the product will be <u>imminently</u> introduced into the U.S. market. *See MedImmune, Inc. v. Genentech, Inc.*, 127 S.Ct. 764, 771 (2007) (alleged dispute must be of sufficient immediacy and reality to warrant declaratory relief); *Teva*, 482 F.3d at 1337-38. But EPOS' Complaint, even when read in light of the documents submitted with EPOS' Opposition, offers assurances of neither. Plainly, that EPOS has exhibited and used a "sample pen" does not make the alleged product-at-issue definite absent a clear allegation that the use of the alleged sample constitutes the act for which EPOS seeks declaratory relief. For that reason, EPOS' alleged use and distribution of a "sample pen" may have no bearing whatsoever on the declaratory relief requested and cannot be used to demonstrate that the alleged dispute is concrete and definite. Tellingly, despite being given the chance to say so in both its Complaint and its Opposition, EPOS does not request a specific declaratory judgment that the alleged distribution and demonstration of its "sample pen" does not infringe Pegasus' patents.

In addition, EPOS' Opposition on its face demonstrates that there is real doubt as to when, if ever, EPOS would enter the United States market and commit the potentially infringing acts for which it seeks declaratory relief. *See* Opposition, Declaration of Oded Turbahn, Document 18-3 at ¶¶18-19 (EPOS' intention to enter the United States market in the "first half of 2007" changed to an intention to enter the United States market in the Fall of 2007). EPOS cannot meet its burden of demonstrating that alleged potentially infringing acts are imminent with evidence that demonstrates that in reality its plans are indefinite. *Benitec*, ___ F.3d ___, 2007 WL 2069646 at *7 (desire to enter market does not establish actual infringement sufficient to support declaratory judgment jurisdiction); *MedImmune*, 127 S.Ct. at 771(concrete and definite dispute required to warrant declaratory relief); *see also Teva*, 482 F.3d at 1336; *Sandisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1378 (Fed. Cir. 2007).

EPOS' apparent reliance on a letter from Pegasus dated in 2006 (the "Letter") is misplaced. The Letter refers to an unspecified EPOS pen and requests that EPOS "forebear" from acts that would infringe Pegasus' patents. The request that EPOS forebear from infringing activity clearly refers to acts potentially performed at some unspecified future time. Because the Letter lacks specificity in identifying either EPOS' future product or EPOS' future marketing activities, it does nothing to lessen the cloud of uncertainty and indefiniteness hovering over EPOS' product development and product marketing plans that undermines the justiciability of the alleged dispute.

The documentary evidence submitted with EPOS' Opposition demonstrates that EPOS' products are actually far from definite. Although EPOS alleges use and an offer to sell, the very document EPOS submits to demonstrate the existence of a product-at-issue proclaims that EPOS "may make improvements and/or changes to the product(s) and/or programs described . . . at any

time." Opposition, Document 18-4 at pp. 2, 4.[2]  Not only that, but the testimonial EPOS relies

on to demonstrate the anticipation of its product in the United States characterizes the EPOS

device as a mere "concept product."  Opposition, Document 18-5 at p. 1.  Rather than

demonstrate the existence of a definite product-at-issue, EPOS' "evidence" proves instead that

the so-called "EPOS pen" is a <u>work-in-progress</u> of uncertain form and function.  Taken with the

absence of a definite product, EPOS' vacillating "intention" to enter the United States market is

too thin a reed on which to base declaratory judgment jurisdiction.  *See Benitec*, ___ F.3d ___,

2007 WL 2069646 at *7 (declaration that company merely desires to enter market does not meet

"burden of showing that [company] is engaged in any present activity that could subject it to a

claim of infringement"); *Telectronics Pacing Sys., Inc. v. Ventritex, Inc.*, 982 F.2d 1520, 1527

(Fed. Cir. 1992) (where "there was no certainty that the device [that ultimately enters the

marketplace] would be the same device [in existence at the time of suit] the district court could

have correctly ruled that the case lacked sufficient immediacy and reality to meet the actual

controversy requirement under the Declaratory Judgment Act . . . and that it had no jurisdiction .

. . ."); *Lang v. Pac. Marine and Supply Co., Ltd.*, 895 F.2d 761, 764 (Fed. Cir. 1990) (actual

controversy requirement not met where allegedly infringing product would not be finished for at

least nine months after the complaint was filed).  Thus, EPOS has failed to establish, with the

requisite specificity, sufficient activities to constitute use or offer for sale to maintain this action.

     Because the alleged dispute is remote and indefinite, EPOS' request for declaratory relief

is no more than a thinly veiled invitation for this Court to render an impermissible advisory

---

[2]  That same document bears a copyright claim for the years "2002-2007" suggesting that it has
seen yearly modification for each of the past six years.  EPOS' claim that it has only "recently"
developed its product, Opposition at p. 3, suggest that that the modifications have been extensive
and/or that the document is not a reliable source for determining the development status of
EPOS' products.

opinion that if at some unspecified future date EPOS enters the United States market with an indefinite product, EPOS will not infringe Pegasus' patents. Such relief is plainly unavailable. *MedImmune*, 127 S.Ct. at 771 (courts do not have jurisdiction to render an "opinion advising what the law would be on a hypothetical set of facts"). EPOS appears to contend that by attaching no specific "name" to its products using instead the indefinite descriptor "EPOS pen" it may side-step the jurisdictional requirement that the product-at-issue be definite and thereby obtain an impermissible advisory opinion that <u>any</u> pen produced by EPOS would not infringe Pegasus' patents.

EPOS further urges this Court to permit this action to continue based on the hope that EPOS will reveal in the course of discovery, presumably at some time after EPOS itself settles on a product design and an actual time for entering the U.S. market, the true subject matter of the alleged dispute. *See* Opposition, at p. 13. EPOS appears to overlook the requirement that the jurisdictional inquiry focuses on the time the complaint is filed; not at some subsequent date during discovery. *See Sallen v. Corinthians Licenciamentos LTDA*, 273 F.3d 14, 23 (1st Cir. 2001) (jurisdictional inquiry based on facts as of the time the complaint is filed).

EPOS' reliance on the Supreme Court's *MedImmune* decision to diminish the significance of its failure to identify a definite product and its failure to demonstrate the actual or imminent entry of that product into the United States market is misplaced. In fact, no authority cited by EPOS found declaratory judgment jurisdiction where the product-at-issue is indefinite and the entry time to the U.S. market of that product is uncertain. In *MedImmune*, the declaratory judgment plaintiff was actually selling the identified product-at-issue in the United States at the time the declaratory action was filed. *See MedImmune*, 127 S.Ct. at 768. Given that EPOS has not identified a specific product-at-issue and has merely stated that it intends to enter

the United States market at some future date, EPOS' characterization of *MedImmune* as "a case such as this one" is inexplicable. *See* Opposition, at p. 8. Similarly, in *Teva*, the declaratory judgment plaintiff, Teva, filed an abbreviated new drug application (an "ANDA") for a specific drug, generic famcyclovir, and asserted that it did not infringe any of the declaratory judgment defendant's patents for the non-generic version Famvir. This act alone subjected Teva to an immediate and definite infringement claim. *Teva*, 482 F.3d at 1340 (citing 35 U.S.C. §271(e)(2)(a))(explaining that submission of an ANDA for a composition that is claimed in a patent, or for the use of which is claimed in a patent, is an act of infringement). Thus, Teva faced a definite and immediate action for infringement on four method patents owned by the patentee, even though the patentee had only sued Teva on its composition patents. *Id*. Similarly, in the very recent *Benitec* case, the Federal Circuit, in dismissing of the declaratory jurisdiction action for lack of jurisdiction, rejected the very arguments made by EPOS. That is, the Federal Circuit held that a declaration by an executive that the company "desired to enter the market" without identification of specific product or customer did not establish a use or offer for sale, sufficient to constitute an act of infringement. *See Benitec*, ___ F.3d ___, 2007 WL 2069646 at *7. In no case cited by EPOS has declaratory judgment jurisdiction been found on the facts of this case where there is no identified product and the entry time of any product into the United States is uncertain.

Apart from the important factual distinction between this case and cases where infringement liability is definite and immediate, *MedImmune* does nothing to relieve declaratory judgment plaintiffs of the requirement that the alleged dispute be both imminent and real. *See MedImmune*, 127 S.Ct. at 771 (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)) (controversy must be of sufficient immediacy and reality to warrant the issuance of a

7

declaratory judgment). In *MedImmune*, the Supreme Court was confronted with the narrow question whether, under circumstances where MedImmune was selling a specific product in the United States that was assertedly within the scope of the patents-at-issue, MedImmune needed also to be in "reasonable apprehension of imminent suit" in order to obtain declaratory relief. *Id.* at 771-72. The Federal Circuit had held that MedImmune could not obtain declaratory relief because its payment of license fees removed any "reasonable apprehension of imminent suit." *Id.* at 768. The Supreme Court disagreed, holding that, under circumstances where the dispute between the patentee and the licensee was both definite and concrete, there was no need for a licensee to take the extra step of subjecting itself to liability by actually breaching the license prior to bringing suit. *Id.* at 777. Simply put, the Federal Circuit's "reasonable apprehension of suit" test had gone too far in excluding declaratory actions in which the dispute was both definite and concrete but lacked the Federal Circuit's additional requirement that a licensee acquire "reasonable apprehension of imminent suit" by breaching its license and incurring immediate liability for infringement. *Id.* at 771-72 ("There is no dispute that [the dispute would have been of sufficient immediacy and reality to warrant the issuance of a declaratory judgment] if [MedImmune] had taken the final step of refusing to make royalty payments . . . ."). The Court emphasized that "the factual and legal dimensions of the dispute [were] well defined." *Id.* at 772. Thus, properly interpreted, *MedImmune* reaffirms the requirement that declaratory judgment relief is reserved for disputes that are real and immediate at the time the action is filed. The Court expressly noted that the declaratory judgment was not available where this jurisdictional prerequisite is not satisfied. *Id.* (The dispute (1) must be definite and concrete, (2) must be real and substantial, and (3) must "admit specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be on a hypothetical set

of facts"). Moreover, in remanding the case to the Federal Circuit, the Supreme Court made

clear that courts retain broad discretion to dismiss a declaratory judgment action where there is

doubt that the requirements for declaratory relief are in doubt. *Id.* at 776. EPOS is incorrect to

rely on *MedImmune* to dismiss the jurisdictional significance of doubts relating to its future

product and the timing of its marketing activities in the United States, for *MedImmune* merely

excuses the absence of actual infringing activity when the alleged dispute is otherwise both

concrete and real.

Accordingly, EPOS' Complaint should be dismissed because EPOS has failed to allege a

definite dispute that is ripe for declaratory relief.

## II.    EPOS' VACILLATING INTENTIONS TO ENTER THE UNITED STATES MARKET WITH AN INDEFINITE PRODUCT JUSTIFY DISCRETIONARY DISMISSAL

Even if EPOS' bare intentions, as stated for the first time in its Opposition, are credited,

the real uncertainty of its indefinite product-at-issue coupled with the evident variability in its

intention to commit any future acts for which declaratory relief is sought make this case ripe for

discretionary dismissal. As recently re-emphasized by the Supreme Court, the award of

declaratory relief is discretionary. *See MedImmune*, 127 S.Ct. at 776; *Wilton v. Seven Falls Co.*,

515 U.S. 277, 288 (1995) (district court has discretion to decline to exercise jurisdiction in a

declaratory judgment action based on "considerations of practicality and wise judicial

administration"); 28 U.S.C. §2201(a) ("court may declare the rights and legal relations of any

interested party") (emphasis supplied). Discretionary dismissal is appropriate if a court has

serious doubts as to whether a dispute is sufficiently imminent and real to warrant declaratory

relief. *See MedImmune*, 127 S.Ct. at 777 (courts may base a discretionary dismissal on

"equitable, prudential and policy arguments."). The Court explained that courts exercising their

discretion to dismiss a declaratory remedy should consider "facts bearing on the usefulness of the declaratory judgment remedy, and the fitness of the case for resolution." *Id.* at 776 (quoting *Wilton*, 515 U.S. at 289).  Dismissal is especially warranted where, as in this case, the facts, including the specific product for which a declaration is sought, and the time at which that product would exist and be introduced in the United States, are in doubt. *See Williams v. Virginia Military Institute*, 198 F.2d 980, 982 (D.C. Cir. 1952) (exercising discretion to dismiss a declaratory judgment action based on "doubts as to its own jurisdiction" where jurisdiction in another forum was clear).[3]

EPOS devotes much of its Opposition to arguing that declaratory relief would be useful because it would enable EPOS to reassure its investors that it is not infringing Pegasus' patents. *See* Complaint, at ¶¶ 12-17, 20-22; Opposition, at pp. 13-14.  Apart from the fact that the blanket declaration EPOS seeks, that "EPOS does not infringe . . . [Pegasus' patents]," is unintelligible without reference to a specific product, the mere fact that EPOS would find declaratory relief useful does not outweigh the fact that the alleged dispute must be real and definite in order to be fit for judicial resolution. *See MedImmune*, 127 S.Ct. at 776-77 (courts consider whether the case is fit for resolution in exercising discretion to dismiss a declaratory judgment complaint). Moreover, EPOS' mere desire for a declaration to placate or reassure potential investors is not a proper basis for, nor does it justify, exercising declaratory judgment jurisdiction. *See Benitec*, ___ F.3d ___, 2007 WL 2069646 at *8 ("[w]e recognize that Nucleonics would like to remove any concerns it or its potential investors might have over possible infringement of the Benitec patent [,but that does] not carry [the] burden of showing an existing justiciable controversy");

---

[3]  Analogous to the *Williams* case, EPOS can always re-file its declaratory judgment complaint when it is able to demonstrate the requirements of declaratory judgment jurisdiction.  That is, when EPOS is able to demonstrate the imminent entry of a definite product into the United States.

*see*, *also*, *MedImmune*, 127 S.Ct. at 776 (courts may exercise discretion to dismiss a declaratory judgment action that seeks relief that is not useful).  As explained above, EPOS' own product descriptions demonstrate that EPOS' products are works-in-progress, subject to change in both form and function.  *See* Opposition, Document 18-4 at pp. 2, 4.  Indeed, EPOS' desire to assure its investors concerning possible future infringement exemplifies the advisory nature of the relief sought.

As such, the Court should exercise its discretion and dismiss the Compliant because there are serious doubts as to whether there is a sufficiently imminent and real dispute to warrant declaratory relief.

### III.   EPOS' COMPLAINT FAILS ON ITS FACE TO SUFFICIENTLY ALLEGE A CAUSE OF ACTION WARRANTING DECLARATORY RELIEF

EPOS' Complaint fails on its face to sufficiently allege the jurisdictional requirements entitling it to the requested declaratory relief.  Though the Federal Rules of Civil Procedure only require sufficient allegations to provide "notice," the notice required is of a specific claim for which the jurisdictional requirements are satisfied.  EPOS' Complaint fails even that liberal standard because, as explained above, the Complaint provides no notice of the actual products-at-issue and the actual or imminent activity in the United States required to create a justiciable controversy.  Although EPOS alleges that it "intends to sell products which [Pegasus] asserts infringe the patents-in-suit, to customers in [the United States]," Complaint, at ¶3,  the relief requested by EPOS does not <u>on its face</u> appear limited to any particular product.  Specifically, the Complaint broadly requests "a declaratory judgment that EPOS does not infringe . . . any claim of [Pegasus' patents]."  Complaint, Prayer for Relief.  Such a blanket declaration is plainly unavailable absent some notice of a definite product and an actual or imminent act of

infringement. *See Glaverbel Societe Anonyme v. Northlake Marketing & Supply, Inc.*, 45 F.3d 1550, 1562 (Fed. Cir. 1995) (district court erred in granting judgment that all of an accused infringers products did not infringe when only some of the products were at issue).

EPOS baldly asserts that it needn't say more about the products-at-issue because "the explicit details Pegasus seeks . . . are easily obtainable through discovery." Opposition, at p. 13. EPOS also contends that Pegasus has notice of the products-at-issue because Pegasus referred to EPOS products in a letter. Opposition, at p. 12 ("Pegasus itself has defined the accused product.") EPOS thus both contends that it needn't identify the product-at-issue in its Complaint because Pegasus referred to the device in a letter <u>and</u> that it needn't identify the product-at-issue in its Complaint because Pegasus can learn the identity of the device in the course of subsequent discovery. Plainly, to the extent that Pegasus would learn anything in subsequent discovery about the <u>identity</u> of the specific EPOS device-at-issue, that device could not be <u>identical</u> to the device referred to in Pegasus' Letter.[4] Thus, EPOS' Complaint on its face raises substantial questions about the identity of the device-at-issue.

In addition, EPOS' allegation that it "intends" to sell products in the United States is plainly insufficient to provide notice that the introduction of any particular EPOS product in the United States is <u>imminent</u>. The section "Events Giving Rise To This Suit," Complaint, at ¶¶12-22, recites numerous communications between entities located <u>outside</u> the United States, but makes absolutely <u>no mention of any event occurring within the United States</u>. EPOS unsuccessfully attempts to cover-up this glaring deficiency in its Complaint by mischaracterizing it as an irrelevant personal jurisdiction issue. *See* Opposition, at p. 9. Quite the contrary, these are the facts and events that EPOS' Complaint proclaims are the <u>very basis of its claim for relief</u>.

---

[4] If EPOS' request for declaratory relief is truly limited to the specific device referred to by <u>Pegasus</u> in the Letter, it should correct its Complaint to clearly say so.

As such, they render EPOS' Complaint plainly insufficient.  Accordingly, EPOS' Complaint fails on its face to sufficiently allege a cause of action warranting declaratory relief, and as such, should be dismissed.

## IV.    CONCLUSION

For the forgoing reasons, all counts of the Complaint should be dismissed.  In the event that the Court determines that dismissal is not warranted, Plaintiff EPOS should be directed to make a more definite statement identifying with specificity the allegedly infringing subject matter and the alleged acts which constitute infringement.


Date:  July 24, 2007                              Respectfully submitted,

                                                  /s/ Michael J. Fink
                                                  Michael J. Fink
                                                  P. Branko Pejic
                                                  Greenblum & Bernstein, P.L.C.
                                                  1950 Roland Clarke Place
                                                  Reston, VA 20191
                                                  Phone/Fax:  (703) 716-1191/716-1180