## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

EPOS TECHNOLOGY LTD.          :
                             :
v.                           :   Civil Action: WMN[1]-07-0416
                             :
PEGASUS TECHNOLOGIES LTD.     :

### MEMORANDUM

Before the Court is Defendant's motion to dismiss, or in the alternative, for a more definite statement.  Paper No. 17. The motion is fully briefed.  Upon review of the pleadings and the applicable case law, the Court determines that no hearing is necessary (Local Rule 105.6) and that Defendant's motion will be denied.

Plaintiff is an Israeli technology company that, since its inception in 2003, has worked to develop advanced digital positioning technology.  Opp'n, Decl. of Oded Turbahn (Turbahn Decl.) ¶ 2.  Recently, Plaintiff developed two products which allow a person to take notes with a wireless digital pen that then appear in handwritten or typewritten form on a computer. Id. ¶ 3.  Plaintiff alleges, and for the purposes of this motion Defendant does not submit any challenging evidence, Reply at 2 n.1, that Plaintiff has been preparing the United States' market

---

[1] This case was reassigned on June 19, 2009, from Judge Richard W. Roberts to the undersigned as a visiting judge from the United States District Court for the District of Maryland sitting by designation.

for its product since 2006.  Plaintiff has discussed the digital

pen in print and television interviews in the United States and

in 2007, Plaintiff sent employees to a computer electronics show

in Las Vegas where they demonstrated the digital pen and handed

out sample pens.  Id. ¶ 10-18.  In all, Plaintiff alleges that

its employees have made approximately ten trips to the United

States to market the pen.  Id. ¶ 14.

Defendant also develops and markets digital pens.  Id. ¶ 8.

On December 31, 2006, Defendant, through its counsel, sent a

letter to Plaintiff and several of Plaintiff's investors stating

that it was Defendant's belief that Plaintiff's "ultrasonic

digital pen product . . . infringes one or more claims of

[Defendant's patents]."[2]  Compl., Ex. E.  The letter requested

that Plaintiff "forbear from making, using and/or selling the

infringing product" and stated that Defendant "is determined to

vigorously enforce its intellectual property and will weigh all

its legal options."  Id.  In addition to sending the letter to

several of Plaintiff's investors, Defendant has told a number of

Plaintiff's investors, customers and potential business partners

that Plaintiff is infringing Defendant's patents and that

Defendant intends to sue Plaintiff.  Turbahn Decl. ¶¶ 21-22, 24;

Opp'n, Decl. of Yoav Hoshen (Hoshen Decl.) ¶¶ 2-4.

---

[2] In particular, the patents at issue are U.S. Patent Nos.
6,392,330, 6,724,371, 6,841,742, and 6,326,565 and will be
referred to hereafter as "Defendant's Patents."

Plaintiff alleges that it had intended its digital pen to be on the United States' market in the first half of 2007, but that Defendant's accusations resulted in Plaintiff's deals closing more slowly (or not at all), and thus, at the time briefing on this motion was submitted,[3] Plaintiff's new expectation was that the pen would not be on the market in the United States until the Fall of 2007.  In order to go forward with their planned release, Plaintiff filed this action under the Declaratory Judgment Act, 28 U.S.C. § 2201(a), and asks the Court to declare Defendant's Patents to be invalid.

In moving for dismissal, Defendant argues that this Court lacks subject-matter jurisdiction and that the Complaint should be dismissed under Fed. Rule Civ. P. 12(b)(1).  On such a motion, "the plaintiff bears the burden of establishing that the court has subject-matter jurisdiction." Mutual Pharm. Co., Inc. v. Pfizer Inc., 307 F. Supp. 2d 88, 91-92 (D.D.C. 2004) (internal citations omitted).  In ruling on a motion under Fed. R. Civ. P 12(b)(1), the court must accept the complaint's well-pled factual allegations as true and draw all reasonable inferences in the plaintiff's favor, but where the motion to dismiss concerns a dispute over the facts alleged to establish

---

[3] This motion became ripe on July 24, 2007.  No substantive motions have since been submitted.  Accordingly, this Court will hold a telephone status conference on August 12, 2009, at 9:45 AM, to be initiated by Plaintiff's counsel.

subject matter jurisdiction, the court may not deny the motion
to dismiss merely by assuming the truth of the facts alleged by
the plaintiff and disputed by the defendant.  Citizen Elect.
Co., Ltd. v. Osram GmbH, 377 F. Supp. 2d 149, 152 (D.D.C. 2005)
(internal quotations omitted).  Instead, the court "must go
beyond the pleadings and resolve any disputed issues of fact the
resolution of which is necessary to a ruling upon the motion to
dismiss."  Id.

Defendant alleges that the Court lacks subject-matter
jurisdiction because no justiciable case or controversy exists
under the Declaratory Judgment Act.  The Declaratory Judgment
Act provides that "[i]n a case of actual controversy within its
jurisdiction . . . any court of the United States, upon the
filing of an appropriate pleading, may declare the rights and
other legal relations of any interested party seeking such
declaration, whether or not further relief is or could be
sought."  28 U.S.C. §2201(a).  The requirement that there be a
"case of actual controversy" has been interpreted to refer "to
the type of 'Cases' and 'Controversies' that are justiciable
under Article III."  Medimmune, Inc. v. Genentech, Inc., 549
U.S. 118, 127 (2007) (internal citations omitted).  Until
recently, the Federal Circuit employed a two-part test to
determine the existence of a sufficient "case or controversy":
(1) whether conduct by the patentee creates a reasonable

4

apprehension on the part of the declaratory judgment plaintiff that it will face an infringement suit; and (2) whether conduct by the declaratory judgment plaintiff potentially constitutes infringing activity or demonstrates concrete steps taken with the intent to conduct such activity.  SanDisk Corp. v. STMicroelectronics, Inc., 480 F.3d 1372, 1379 (Fed. Cir. 2007).

In 2007, however, the Supreme Court rejected the Federal Circuit's "reasonable apprehension test" in MedImmune, 549 U.S. at 132, n. 11.  The specific question the Court considered in that case was whether Article III and the Declaratory Judgment Act require "a patent licensee to terminate or breach its license agreement before it can seek a declaratory judgment that the underlying patent is invalid, unenforceable, or not infringed."  Id. at 120-21.  MedImmune was a drug manufacturer that entered into a licensing agreement with a patentee, Genentech, allowing it to sell products the sale of which would otherwise infringe on one or more claims of Genentech's patents. Id. at 121.  The Court held that subject matter jurisdiction existed despite the fact that "the continuation of royalty payments [by MedImmune] makes what would otherwise be an imminent threat at least remote, if not inexistent."  Id. at 128.

In coming to this conclusion, the Court specifically analyzed and rejected the Federal Circuit's "reasonable

apprehension of suit" test and stated that "[t]he rule that a
plaintiff must destroy a large building, bet the farm, or (as
here) risk treble damages and the loss of 80 percent of its
business, before seeking a declaration of its actively contested
legal rights finds no support in Article III."   Id. at 134.
More generally, the Supreme Court reiterated that in patent
cases, as in all other cases, the general rules regarding
Article III and Declaratory Judgment Act jurisdiction apply.
The Court stated that "[t]he dilemma posed . . . [by] the choice
between abandoning his rights or risking prosecution is 'a
dilemma that it was the very purpose of the Declaratory Judgment
Act to ameliorate.'"   Id. at 129 (quoting Abbott Laboratories v.
Gardner, 387 U.S. 136, 152 (1967)).

     Declaratory judgment jurisdiction in patent cases thus
requires that the dispute be "definite and concrete, touching
the legal relations of parties having adverse legal interests";
"real and substantial"; and "admit of specific relief through a
decree of conclusive character, as distinguished from an opinion
advising what the law would be upon a hypothetical state of
facts."   Id. at 127 (internal quotation omitted).   In short, the
question "is whether the facts alleged, under all the
circumstances, show that there is a substantial controversy,
between parties having adverse legal interests, of sufficient
immediacy and reality to warrant the issuance of a declaratory

judgment." _Id._ (internal quotations omitted).  Since _MedImmune_,
the Federal Circuit has held that a substantial controversy
exists "where a patentee asserts rights under a patent based on
certain identified ongoing or planned activity of another party,
and where that party contends that it has the right to engage in
the accused activity without license."  _SanDisk_, 480 F.3d at
1381.

       Defendant alleges that there is no case or controversy in
the present matter because "[t]he allegedly non-infringing
products have not been specifically identified, and there is no
allegation that the design of the allegedly non-infringing
products has been finalized, or that they are being manufactured
in or being exported to the United States."  Mot. at 9.  Thus,
Defendant argues, any declaratory judgment regarding Defendant's
Patents would amount to no more than an advisory opinion, based
on a set of hypothetical facts.

       Defendant's challenge is defective as a matter of law.
Following Defendant's argument to its logical conclusion,
Plaintiff could only challenge the validity and enforceability
of its digital pen by selling the allegedly infringing pen and
thereby making itself a possible infringer.  As noted above,
however, both the Supreme Court and the Court of Appeals for the
Federal Circuit have reaffirmed that a potential infringer need

not force itself into the position of becoming an infringer before bringing an action under the Declaratory Judgment Act.

A declaratory judgment plaintiff need only show "under 'all the circumstances' an actual or imminent injury caused by the defendant that can be redressed by judicial relief and that is of 'sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Teva Pharm. USA, Inc. v. Novartis Pharm. Corp., 482 F.3d 1330, 1338 (Fed. Cir. 2007).  Plaintiff has met these requirements.  Plaintiff has alleged an actual and imminent injury by Defendant.  As noted above, Plaintiff alleges that Defendant's accusations regarding possible infringement by Plaintiff's digital pen have caused investor relationships to sour and resulted in Plaintiff's inability to release its new product into the United States' market.  Additionally, the injury alleged by Plaintiff is immediate and real.  Plaintiff alleges that it had planned to release the pen in early 2007, but because of actions taken by Defendant, it has had to push that date back.

Defendant responds that because Plaintiff has changed its intended release date, the potentially infringing act of selling the pen in the United States is not imminent.  In support of this argument, Defendant likens Plaintiff's situation to that of the declaratory judgment plaintiff in Benitec Australia, Ltd. v. Nucleonics, Inc., 495 F.3d 1340 (Fed. Cir. 2007).  In that case,

Benitec sued Nucleonics for infringing Benitec's gene-therapy
patent.  Id. at 1342.  Nucleonic initially moved to dismiss on
the basis that it was years away from introducing any infringing
gene-therapy drug products, but eventually amended its answer to
include a counterclaim seeking a declaration that the patent was
invalid and unenforceable.  Id. at 1342-43.  After Benitec
dismissed its own complaint in light of an unfavorable Supreme
Court decision, the district court dismissed Nucleonic's
counterclaim for lack of jurisdiction and the Federal Circuit
affirmed.  Id. at 1343.  In its opinion, the Federal Circuit
noted that the parties agreed that Nucleonic's activities
related to human gene-therapy drug treatment[4] could not be
considered infringing unless and until Nucleonics filed a new
drug application (NDA) with the Food and Drug Administration
(FDA).  Id. at 1346.  Nucleonic did not anticipate filing an
NDA, however until "at least 2010-12, if ever," and its current
activities consisted entirely of developing and submitting
(unidentified) preliminary information to the FDA.  Id.  Such
circumstances, the Federal Circuit found, did not "prove the
immediacy and reality required for a declaratory judgment."

---

[4] The Court also discussed Nucleonic's activities related to
animal gene-therapy drug treatment in a separate portion of the
opinion.

Although Plaintiff, at the time of briefing, has not yet
entered the United States market, it is clear that Plaintiff's
situation is markedly different from that of Nucleonic.  While
Nucleonic admitted that there was a possibility that it would
never file an NDA, and therefore, a possibility it would never
participate in the allegedly infringing activity, Plaintiff has
announced its intention to enter the United States market as
soon as possible.  Additionally, Plaintiff alleges that the
reason it has not yet entered the United States market is
because of the activity of Defendant – the very activity
Plaintiff's declaratory judgment complaint attempts to remedy.
Accordingly, this Court finds that Plaintiff's Complaint does
present an actual case or controversy.

Defendant next argues that, even if the Court finds an
actual case or controversy, it should decline to exercise
declaratory judgment jurisdiction.  The Declaratory Judgment Act
allows, but does not mandate, a court to "declare the rights and
other legal relations of any interested party."  28 U.S.C. §
2201(a).  "This text has long been understood to confer on
federal courts unique and substantial discretion in deciding
whether to declare the rights of litigants." MedImmune, 549
U.S. at 136.  District courts are to consider any "equitable,
prudential, and policy arguments in favor of such discretionary
dismissal." Id.  Despite quoting this language in its motion

and reply, Defendant does not provide any such argument.

Instead, Defendant simply restates its original argument that

the fact that Plaintiff has not yet sold its product in the

United States means that declaratory judgment jurisdiction does

not exist.  As stated above, this Court disagrees and, in the

absence of grounds to do otherwise, will exercise its

discretionary declaratory judgment jurisdiction.[5]

Finally, Defendant asks that, if its motion to dismiss is

denied, the Court require Plaintiff to make a more definite

statement pursuant to Fed. R. Civ. P. 12(e).  A motion for a

more definite statement is "typically disfavored by the courts,"

Rahman v. Johanns, 501 F. Supp. 2d 8, 19 (D.D.C. 2007), and

properly filed only "where a plaintiff's complaint is

'unintelligab[le],' not where a complaint suffers for 'lack of

detail.'"  Lindsey v. United States, No. 05-1761, 2009 WL

1110900, at *3 (D.D.C. April 27, 2009) (quoting Towers Tenant

Ass'n v. Towers Ltd. P'ship, 563 F. Supp. 566, 569 (D.D.C.

1983)).  Courts have found that if the information sought by the

---

[5] Defendant also alleges that Plaintiff has failed to state a
claim upon which relief can be granted.  Defendant argues that
Plaintiff "has failed to allege any infringing activity, and has
failed to allege any imminent infringing activity in the United
States[,]" and has thus, failed to state a claim.  Despite the
use of a different Federal Rule, Defendant's argument for
dismissal under Fed. R. Civ. P. 12(b)(6) is exactly the same as
its argument under 12(b)(1).  Having determined that this
argument fails and that the Court does in fact possess subject
matter jurisdiction over Plaintiff's claims, the Court will also
deny the motion under rule 12(b)(6).

motion is obtainable through discovery, the motion should be
denied.  See, e.g., Towers (denying motion for a more definite
statement because details such as "dates, times, names and
places" are "the central object of discovery, and need not be
pleaded").

Plaintiff's pleading is not confusing and does not violate
Fed. R. Civ. P. 8(a)'s requirement of "a short and plain
statement of the claim showing that the pleader is entitled to
relief."  The counts at issue in this case revolve around the
Plaintiff's allegation that it does not directly or indirectly
infringe any of the four patents at issue and that those patents
are invalid and unenforceable.  Compl. ¶ 23-46.  Given that
Defendant has sent a letter stating that it believes that
Plaintiff's digital pen infringes the patents at issue, it is
safe to say that Defendant can deny these claims in its answer
without prejudice to itself.  Specific facts are not necessary
in a Complaint, instead, the statement need only "give the
defendant fair notice of what the . . . claim is and the grounds
upon which it rests."  Bell Atlantic v. Twombly, 550 U.S. 544,
555 (2007).  In this case, any additional details can be
revealed though discovery.

For the foregoing reasons, Defendant's motion to dismiss, or in the alternative, for a more definite statement, will be denied.  A separate order will issue.

_____/s/_____
William M. Nickerson
United States District Judge

Dated: July 20, 2009