IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

EPOS TECHNOLOGIES et al.          *
                                  *
          v.                      *   Civil Action WMN-07-416
                                  *
PEGASUS TECHNOLOGIES et al.       *
                                  *

    *    *    *    *    *    *    *    *    *    *    *    *

## MEMORANDUM AND ORDER

Both EPOS Technologies, Ltd. and Pegasus Technologies, Ltd. make digital pens that track the motion of a pen or marker and convert the movements for display on a computer.  In 2007, EPOS sued Pegasus seeking a declaratory judgment that its products do not infringe on four of Pegasus' patents.  Pegasus then counterclaimed and alleged infringement of six patents, including the first four at issue in EPOS' Complaint.  Currently pending before the Court are two motions to compel discovery, one filed by (Pegasus), ECF No. 93, and one filed by (EPOS), ECF No. 97.  The motions are fully briefed.[1]  Upon a review of the pleadings and applicable case law, the Court determines that both motions will be granted in part and denied in part, as set forth below.

---

[1] Both parties have also filed Motions for Leave to File a Surreply to each other's respective replies.  ECF Nos. 107 and 110.  The Court will accept the pleadings and consider them in accordance with Local Rule 105.2(a).

## I.   Pegasus' Motion

Pegasus has filed a motion to compel Plaintiff EPOS and
Counter-Defendants Dane-Elect S.A., Dane-Elec Memory S.A., and
Dane-Elec Corporation USA (collectively, Dane-Elec)[2] to produce
additional documents and supplement their interrogatory
responses.   EPOS contends that it has adequately responded to
all discovery requests.   The crux of this dispute involves the
question of whether EPOS is required to produce information
about products other than the Zpen and particularly whether it
must produce information about products that are still in
development.

Pegasus has served on EPOS and Dane-Elec two sets of
requests for production and two sets of interrogatories related
to "accused products."   In the first set, Pegasus provided the
following definition of "accused products":

> [A]ny product or service using ultrasonic location
> technology.   This includes, but is not limited to pens and

---

[2] Dane-Elec has not filed an opposition to the motion pending
against it.   Notwithstanding, in its opposition EPOS notes that
it has not provided information about EPOS's products that are
in development to Dane-Elec and Dane-Elec has no documents
related to these products.   Opp. at FN.3.   In support of this
statement, it attached a Declaration signed by Oded Turbahn, CEO
of EPOS Development Ltd., ECF No. 99-10, and a Declaration
signed by Jeffrey Jacobs, General Counsel of Dane Elec Corp.
USA, ECF No. 99-11.   As there is no evidence to the contrary and
Pegasus does not dispute this contention, the Court will presume
that Dane-Elec has adequately responded to the discovery
requests and is not in possession of any of the information
Pegasus is seeking to compel through its present motion, and so
deny the motion as against Dane-Elec.

> associated bases or flash drives bearing the mark,
> trademark, or designation Zpen and/or [EPOS/Dane-Elec].

Mot. Mem. at 3.  In the second set of requests, Pegasus updated

the definition of "accused product" in order to capture

additional discovery so that it could accurately determine the

scope of EPOS' and Dane-Elec's infringing activity:

> [A]ny product or service concerning location technology
> related to writing or drawing.  Accused products include,
> but are not limited to, (a) pens and associated bases or
> flash drives bearing the mark, trademark, or designation of
> "ZPEN," "Hello Kitty," "GPEN300," "INTELLIPEN," and/or
> "Epos" and any variants thereof; and (ii) pens that
> transmit or receive ultrasound that were made by or for
> [EPOS/Dane-Elec] and that were sent directly or indirectly
> to other entities, including, without limitation, Qualcomm
> and Motorola.

Id.; Reply at 1.  The parties have met and conferred several

times to discuss the proper scope of discovery related to

"accused products," but have not been able to reach an

agreement.  EPOS memorialized its position in a letter dated

August 24, 2011, stating:

> Based on Pegasus' and Ludidia's April 8, 2011 Infringement
> Contention, Epos understands "accused products" to refer to
> the Dan-Elec Zpen . . . Until Pegasus and/or Luidia move to
> amend these contentions, only the Zpen stands properly
> accused of infringing the patents-in-suit.  Epos has
> provided discovery on other products, including the
> Intellipen and IOGEAR GPEN300, but neither Pegasus nor
> Luidia has alleged that these products infringe the
> patents-in-suit.

Mot. Mem. at 5.  In essence, EPOS objects to Pegasus' request

for discovery relating to products other than those specifically

named in the Infringement Contentions; as the Zpen is the only

product specifically named, that is the only product for which it contends it has any discovery obligation.[3]

The Court disagrees with the narrow position taken by EPOS. Case law from various circuits clearly states that there is no bright-line rule limiting discovery to only those products specifically accused in a party's infringement contentions. See, e.g., O2 Micro Int'l, Ltd. v. Monolithic Power Sys., 467 F.3d 1355, 1363 (Fed. Cir. 2006); Honeywell Int'l, Inc. v. Acer Am. Corp., 655 F. Supp. 2d 650, 655-656 (E.D. Tex. 2009); Dr. Systems, Inc. v. Fujifilm Med. Sys. USA, Inc., No. 06-CV-417, 2008 WL 1734241 at *3 (S.D. Cal. April 10, 2008).  Rather, the rule is that "[d]iscovery concerning products not explicitly listed in the infringement contentions is appropriate when: 1) the infringement contentions give notice of a specific theory of infringement; and 2) the products for which a plaintiff seeks discovery operate in a manner reasonably similar to that theory."  Nidec Corp. v. LG Innotek Co., Ltd., No. 6:07-CV-108, 2009 WL 3673253, at *2 (E.D. Tex. Sept. 2, 2009) (citing Honeywell, 655 F. Supp. 2d at 655).

In its infringement contentions (ICs),[4] filed on April 8, 2011, Pegasus alleges that Defendants have infringed "by making,

---

[3] As noted in its letter, EPOS has, in the spirit of cooperation, produced information related to the few other products similar to the Zpen that it has sold in the United States.

4

using, importing, selling, and/or offering for sale ultrasonic digital pens and software therefor including, without limitation, the 'DANE-ELEC'-brand Zpen ultrasonic digital pen." ECF No. 94-18.  The ICs then go into further detail about the specific claims related to each patent.  Based on the limited record and briefing as to this specific issue, the Court grants Pegasus' Motion to Compel insofar as EPOS is required to produce information related to products that are reasonably similar to the Zpen and for which it is on notice based on the theories of infringement alleged in the ICs.  The Court notes that EPOS has already produced information related to similar products sold in the United States; though EPOS says it did this voluntarily, such information was in fact required to be produced based on the ICs and the discovery requests.  Though the Court has no reason to believe it is the case, insofar as EPOS is in possession of not-yet-produced information regarding additional similar products, it is ordered to produce such information to Pegasus within seven days after the date of this order.

The Court, however, holds differently with respect to the EPOS products that are still being developed.  Pegasus seeks information about products EPOS is developing with Motorola and

---

[4] The Court notes that EPOS argues in its Opposition that it is too late for Pegasus to amend the ICs and name products in addition to the Zpen.  Opp. at 7.  Notwithstanding, the Court need not decide this issue because, at present, Pegasus has not attempted to amend its ICs.

Qualcomm, both of which were displayed in prototype form at the
Mobile World Congress in Barcelona, Spain in February 2011.  See
ECF No. 94-19 (describing the EPOS-Qualcomm device);
http://www.slashgear.com/epos-ultrasonic-pen-turns-your-table-
into-a-tablet-video-14133516/, (last visited: January 30, 2012)
(describing EPOS-Motorola device); see also Turbahn Decl.at ¶ 8
(ECF No. 99-10).  Pegasus argues that it is entitled to receive
information about these two devices in order to confirm whether
they infringe on Pegasus' patents.  Mot. Mem. at 8.  The Chief
Executive Officer of EPOS Development Ltd. stated in his
declaration that the Qualcomm-EPOS pen referred to by Pegasus
was a handmade pre-prototype pen, for which no commercial
production has taken place.  Turbahn Decl. at ¶ 8.  He also
stated that "the design of these products will change many times
before any of the future generation products are ready for
commercial production."  Id.  Requiring EPOS to produce
information about these devices while they are still in
development would not advance Pegasus' pending claims because
there is not yet any final product that can be evaluated for
infringement; the design is still in flux.  The only conduct
that has taken place with respect to these devices is their
demonstration in a pre-prototype form at a technology
conference, and such conduct, which took place in Spain, appears
to be within the bounds of the law.  See 35 U.S.C. § 271

(prohibiting the making, use, offering for sale, or sale of any patented invention <u>within</u> the United States, and the importation into the United States of any patented invention).

Though it is true that "[t]he scope of discovery in patent cases should be liberally construed under the Federal Rule of Civil Procedure 26(b)(1)," <u>Dr. Systems, Inc.</u>, 2008 WL 1734241 at *3 (internal citation omitted), it is not so broad as to require the discovery of products that do not yet exist in a final form. Once a final product is developed, if Pegasus has reason to believe the product infringes its patents, then Pegasus certainly may file suit and appropriately seek discovery regarding that final product.  At the present time, however, the Court will not require EPOS to produce discovery about its products in development.

**II. EPOS' Motion**

EPOS filed its Motion to Compel on September 27, 2011.  ECF No. 97.  At the time it filed this Motion, it complained that, to date, Pegasus had produced very little discovery despite the broad requests for production that had been served on it nearly a year prior, on November 11, 2010.  <u>See</u> EPOS' First Req. Produc. at ECF No. 97-12.  The paltry amount of discovery appeared to be especially deficient when contrasted with the volume of discovery produced by the other parties.  Mot. at 7 (comparing EPOS' production of over 154,000 pages of documents,

Dane-Elec's production of over 10,000 pages, and Luidia's production of over 9,000 pages with Pegasus' production of only 2,310 pages).  EPOS also complained that the discovery that Pegasus had produced did not comply with the requirements of the Protective Order, see ECF No. 73, because Pegasus failed to include a Bates number and confidentiality designation on each page of the produced documents, instead merely including the designation and Bates number on the file itself.  Mot. at 9-10.

Pegasus opposed EPOS' motion, arguing that the motion was premature and factually incorrect.  Pegasus stated that it never at any time represented that it had completed its search or had no further documentation to produce, and in fact had since produced a significant amount of responsive discovery, amounting to a total production of over a million pages.  Surreply at 3. Furthermore, Pegasus explained that the reason its first set of production lacked page by page Bates numbering and confidentiality designations was because it was a production of electronically stored information in its native format, as requested in EPOS' Request for Production, and the native format did not allow for numbering or designations on every "page;" Pegasus did the best it could and included the number and designation in the name of the native file.  Opp. at 3-4.  After EPOS complained about the lack of page by page designations in this first set of production, Pegasus made its second, third,

fourth and fifth productions of documents in a non-native format that allowed for page by page numbering and designations, and included those designations as appropriate.  Opp. at 4.

In the Court's view, as things currently stand, the only two issues that need resolution through a court order are whether Pegasus must complete its production by a date certain and whether Pegasus must reproduce its first set of discovery in a format that will support page by page numbering and designations.  The briefing does not indicate that Pegasus opposes being given such a deadline and in light of the twin facts that Pegasus has likely already produced the bulk of responsive discovery and that the deadline for non-expert discovery is quickly approaching, the Court will grant EPOS' request and require that Pegasus complete its search for responsive discovery within seven days after this Order and produce all responsive, non-privileged discovery within fourteen days after this Order.

Additionally, EPOS, in the spirit of cooperation, has conceded that it will use the native files produced in Pegasus' first set of production and not require that they be reproduced in a different format so long as

> Pegasus agrees not to assert objections to: 1) the use of printouts of the native files without imposing on EPOS the obligation to apply confidentiality markings to those printouts, 2) the authentication of printouts of the native

files, and 3) any numbering EPOS may apply to the documents to make the documents more useable in deposition and trial.

Reply at 6.  Though it filed a surreply, Pegasus did not address whether it agreed to these conditions.  Because of this lack of response and the apparent reasonableness of these conditions, the Court will assume they are acceptable to Pegasus and deny the motion to compel Pegasus to reproduce its first set of production in an alternative format.  If, however, Pegasus will not agree to these conditions, it must notify the Court within seven days and the Court will revisit this issue.

## III. Conclusion

Accordingly, it is this 31st day of January, 2012, by the United States District Court for the District of Columbia, ORDERED:

1. That both Motions for Leave to File a Surreply, ECF Nos. 107 and 110, are GRANTED;

2. That Pegasus's motion to compel, ECF No. 61, is hereby;

   a. DENIED, as against Dane-Elec.;

   b. GRANTED, in that EPOS must produce within seven days after this Order any not-yet-produced information regarding additional products that are reasonably similar to the Zpen;

    c. DENIED, in that EPOS is not required to produce any

       information related to its products that are still

       in-development;

3. That EPOS' motion to compel, ECF No. 97, is hereby:

    a.  GRANTED, in that Pegasus Technologies, Ltd. must

       complete its search for discovery responsive to

       EPOS' First Request for Production within seven days

       after this Order and produce all such responsive,

       non-privileged discovery within fourteen days after

       this Order;

    b. DENIED, in that Pegasus is not required to reproduce

       its first set of production so long as it agrees to

       the proffered conditions, but if Pegasus refuses the

       conditions it must notify the Court within seven

       days so the Court can revisit this issue; and

4. That the Clerk of the Court shall transmit a copy of this

   Memorandum and Order to all counsel of record.


                         /s/
             William M. Nickerson
             Senior United States District Judge